AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California



**FILED**
12/23/2022
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY    vyc    DEPUTY

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*
Apple iPhone (Grey)
Model: iPhone 13
IMEI: Unknown

Case No. 22MJ8842

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the _____Southern_____ District of _____California_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 USC 1324 | Transportation of Illegal Aliens |

The application is based on these facts:
See Attached Affidavit of Border Patrol Agent Moncerad Soto incorporated herein by reference.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Border Patrol Agent Moncerad Soto
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by _____telephone_____ *(specify reliable electronic means)*.

Date: 12/23/2022

*Judge's signature*

City and state: El Centro, California

HON. LUPE RODRIGUEZ, JR, US MAGISTRATE JUDGE
*Printed name and title*

## ATTACHMENT A
### PROPERTY TO BE SEARCHED

The following property is to be searched:

>Apple iPhone (Grey)
>Model: iPhone 13
>IMEI: Unknown
>Seized from Julio Emanuel ARA-Revolorio
>**(Target Device)**



The **Target Device** is currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## **ATTACHMENT B**

## ITEM TO BE SEIZED

Authorization to search the mobile telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of September 3, 2022, up to and including October 3, 2022, and is limited to the following:

a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b. tending to identify other facilities, storage devices, or services – such as email addresses, IP addresses, and/or phone numbers – that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e. tending to identify the user of, or persons with control over or access to, the Target Device;

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of Title 8 U.S.C. § 1324.

# AFFIDAVIT

I, Moncerad Soto, United States Border Patrol Agent, having been duly sworn, depose and state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for warrant(s) to search the following electronic device(s):

> Apple iPhone (Grey)
> Model: iPhone 13
> IMEI: Unknown
> Seized from Julio Emanuel ARA-Revolorio
> **(Target Device)**

as further described in Attachment A, and to seize evidence of a crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2. The requested warrant relates to the investigation and prosecution of Julio Emanuel ARA-Revolorio (ARA), for illegally bringing into the United States aliens Mipsam Jose Axel RIVERA-Perez and Jose Gregorio VARA-Reza (VARA), (the "Material Witnesses") in violation of Title 8 U.S.C. § 1324 within the Southern District of California. The Target Device was seized from ARA on or about October 2, 2022, incident to his arrest.[1] The Target Device is currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

3. Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth every fact that I, or others, have learned during the course of this investigation. The information contained in this Affidavit is based upon my personal observations and

---

[1] This Court previously granted a Search Warrant for the Target Device on November 9, 2022. The time limit for execution of the Search Warrant expired on November 23, 2022 and the search was not completed within that time frame due to a clerical error in processing. Therefore, this Affiant is now requesting a Search Warrant based on identical probable cause in order to execute the search.

1

knowledge, my review of various official reports, and upon conversations with other Border Patrol Agents. Dates and times are approximate.

## EXPERIENCE AND TRAINING

4. I am a United States Border Patrol Agent with the Department of Homeland Security, Customs and Border Protection, United States Border Patrol ("USBP"). I have been employed as a full-time, sworn federal BPA with the USBP since February 2016, and graduated from the USBP Basic Border Patrol Training Academy located in Artesia, New Mexico. The 20-week Academy curriculum covers specialized training in the Immigration and Naturalization Act, criminal law, and statutory authority, as well as cross-training in Title 21, United States Code, Controlled Substances law, and in Title 19, United States Code, Customs law.

5. I am currently assigned to the El Centro Sector Prosecutions Unit. The El Centro Sector Prosecutions Unit is tasked with the responsibility of investigating and prosecuting alien smuggling organizations that utilize the Southern and Central Districts of California as an operational corridor. In the course of my duties as a Border Patrol Agent, I investigate and prepare cases for prosecution against persons involved in the inducement of the illegal entry of undocumented aliens into the United States; the smuggling of undocumented aliens into the United States; and the transportation and harboring of undocumented aliens within the United States.

6. Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, in particular those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California. I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities,

2

1  including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit,
2  providing instructions to transporters, guiding aliens to specific pick up locations, warning
3  accomplices about law enforcement activity in the area and the status of check-point
4  operations, and communicating with co-conspirators who guide aliens, coordinate drop off
5  locations, and/or operate alien stash houses.
6        7.    The smuggling of aliens generates many types of evidence, including, but not
7  limited to, cellular phone-related evidence such as voicemail messages referring to the
8  arrangements of travel, names, photographs, text messaging (via SMS or other
9  applications), and phone numbers of co-conspirators and illegal aliens. For example,
10 drivers and passengers responsible for transporting illegal aliens are typically in telephonic
11 contact with co-conspirators immediately prior to and/or following the crossing of the
12 illegal aliens at the border, at which time they receive instructions, including where to pick-
13 up the illegal aliens for transportation into the United States and where to take the illegal
14 aliens after crossing into the United States. These communications may also include
15 locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in
16 telephonic contact with co-conspirators prior to and following their crossing in order to
17 make smuggling arrangements, receive instructions, and report their locations after
18 crossing.
19       8.    Based upon my training, experience, and consultations with law enforcement
20 officers experienced in narcotics trafficking investigations, and all the facts and opinions
21 set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity
22 Module (SIM) card(s)) can and often do contain electronic evidence, including, for example,
23 phone logs and contacts, voice and text communications, and data, such as emails, text
24 messages, chats and chat logs from various third-party applications, photographs, audio
25 files, videos, and location data. In particular, in my experience and consultation with law
26 enforcement officers experienced in alien smuggling investigations, I am aware that
27 individuals engaged in alien smuggling may store photos and videos on their cell phones
28 that reflect or show co-conspirators and associates engaged in alien smuggling, as well as

images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

9. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

    a. tending to indicate efforts to smuggle aliens from Mexico into the United States;

    b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

    c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

    d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

    e. tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

    f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

10. On October 2, 2022, Border Patrol Agents assigned to the El Centro Sector Intelligence Unit were conducting anti-smuggling and intelligence gathering duties within the El Centro Border Patrol Sector's area of responsibility. While conducting surveillance, Agent M. Clinton drove through the Motel 6 parking lot, located in the 300 block of Smoketree Drive in El Centro, California. Agent Clinton was looking for signs of alien smuggling at the motel. The motels in the border region are commonly utilized by alien smugglers due to their low cost and proximity to egress routes away from the border. While driving through the parking lot, Agent Clinton recognized a black Volkswagen Jetta parked

on the east side of the property. Agent Clinton spoke with BPA R. Raymer about this vehicle earlier in the day and Agent Raymer placed alerts in Department of Homeland Security (DHS) systems based on the vehicle's driving patterns. Agent Raymer had conducted research on the vehicle and observed that it had a driving pattern consistent with alien smuggling. Aside from suspicious travel patterns, Agent Raymer noted that the vehicle had been previously encountered by Indio Border Patrol Agents at the Indio Border Patrol Station's Highway 86 Checkpoint on September 4, 2022. On that date, the Jetta was referred to the secondary inspection lane and the driver was Julio Emanuel ARA-Revolorio (ARA), a citizen of Guatemala and a lawful permanent resident of the United States. ARA is also the registered owner of the Jetta.

11. After locating the Jetta at the Motel 6, Agent Clinton notified other FIT Agents regarding the vehicle. Agent Clinton observed a male subject, later identified as ARA, dressed in black open the door to Room 252 and receive an order of fast-food from a rideshare delivery service. Moments after receiving the food, ARA left the room empty-handed and entered the Jetta. ARA left the motel and entered Interstate 8 eastbound in the Jetta. Based on his training and experience, Agent Clinton believed that ARA may have left the food in the room for a co-inhabitant at the motel or may have left in a hurry to conduct illicit activity.

12. Agents Clinton and Toledo followed ARA towards the desert near the Imperial Sand Dunes. Agent Clinton ran the license plate through Sector dispatch while following the vehicle eastbound. Sector dispatch stated that the vehicle was registered to ARA with an address in Los Angeles. Sector dispatch also stated that the vehicle had an alert. Agents Clinton and Toledo followed the vehicle until it conducted a U-turn at the Imperial San Dunes Rest Area, east of the Gordon's Well Exit. At this point, Agents Castaneda, Amparan, and Botello assumed the surveillance role and began following the vehicle. FIT Agents followed the vehicle and observed ARA driving slowly and continually applying the brakes, which appeared as if he were looking for aliens on the side of the road. ARA slowed down on Interstate 8 and stopped on the shoulder.

13. Remote Video Surveillance System (RVSS) operators assigned to the Calexico Border Patrol Station observed two suspected aliens running towards the Jetta and one suspected alien entered the vehicle. RVSS operators from the Calexico Station broadcasted their observations to Agents in the area. Supervisory Border Patrol Agent A. Mills heard the radio traffic and responded. Agent Mills saw the Jetta pulled over, turned around in the median and activated his emergency lights and sirens to initiate a vehicle stop. ARA disregarded the lights and sirens and fled at high speeds. One suspected alien was left behind and was quickly apprehended by Border Patrol Agents.

14. Agent Mills engaged in a high-speed pursuit after ARA, reaching speeds of over 100 miles per hour. ARA exited Interstate 8 at the Gordon's Well Exit and merged onto Old Highway 80 (Old 80), continuing westbound. Agent Botello followed ARA onto Old 80 in his unmarked service vehicle while Agent Mills paralleled ARA on Interstate 8. Due to dangerous speeds, and the fact that ARA was travelling on an un-maintained road with several potholes, the pursuit was terminated near the Brock Research Exit. Agents continued to follow the vehicle from a distance without lights and sirens activated.

15. As the Jetta approached the Highway 115 interchange, ARA drove north on Highway 115 into the city of Holtville. Agent Botello was following from a distance but had trouble keeping up as his vehicle is limited to a speed of 112 miles per hour. Agent Botello lost visual of the Jetta momentarily, but Agent Toledo reacquired visual of the Jetta on Evan Hewes Highway leaving Holtville towards El Centro. Agent Toledo followed the Jetta on Evan Hewes Highway westbound, then south on Highway 111, then westbound on Interstate 8. ARA took the 4th Street exit to go to the Motel 6. Agent Amparan was already positioned across the street from Motel 6, anticipating ARA's return.

16. When ARA arrived at Motel 6, Agent Amparan observed ARA park on the east side of the property and exit the Jetta accompanied by a male individual. ARA walked up the stairwell followed by male individual, later identified as Mipsam Jose Axel RIVERA-Perez. ARA and RIVERA entered the hotel room. Agent Clinton contacted Agents Mills and Agent Bourque of the Calexico Station and notified them that Agents had

followed the Jetta to the motel. Calexico Agents and FIT Agents approached the door and knocked. After knocking for several minutes, ARA opened the door.

17. Agent Mills asked ARA to step out and he complied. Agent Mills questioned ARA as to his citizenship and he said he was a citizen of Guatemala. Agent Clinton asked ARA who else was in the room and he said his friend was in the shower. Believing that ARA was harboring an illegal alien within the room, Agent Clinton then placed ARA in handcuffs and requested consent to enter the room. ARA granted consent and Agents Bourque, Heipt, and Clinton entered the room while other Agents maintained custody of ARA.

18. Agents Bourque, Heipt, and Clinton announced themselves as Border Patrol Agents and ordered the person in the bathroom to come out. A male individual yelled in Spanish that he was in the shower. Agent Heipt opened the door and observed RIVERA emerging from the shower. Agent Heipt determined that RIVERA is an alien from Guatemala illegally present in the United States. ARA and RIVERA were placed under arrest. RIVERA admitted he made the illegal entry by climbing the border fence and by walking through an area other than through a designated Port of Entry. ARA and RIVERA were transported to the Calexico Border Patrol Station for processing.

19. A search incident to the arrest of ARA by BPA Toledo uncovered one grey iPhone cellular telephone (Target Device). The Target Device was found in the motel room and was seized as evidence. Ara claimed ownership of the Target Device.

20. At the Border Patrol Station ARA was read his rights as per Miranda. ARA stated he understood his rights and was willing to answer questions without the presence of an attorney. ARA stated he is a legal permanent resident and resides in Los Angeles. ARA stated he first picked up a single illegal alien 15 days ago and he was paid $500.00 to transport the individual to a hotel in Yuma, Arizona. ARA stated that on October 1, 2022, he picked up two illegal aliens and transported them to the same hotel in Yuma, Arizona. ARA further admitted that earlier in the day on October 2, 2022, he picked up another two illegal aliens and transported them to the same hotel in Yuma, Arizona.

21. Material witness RIVERA stated he made arrangements to be smuggled into the United States for $10,500.00 USD. RIVERA was presented with a six-pack photo line-up and RIVERA was able to identify ARA as the driver of the vehicle where he was transported.

22. Based upon my experience and investigation in this case, I believe that ARA and other persons, as yet unknown, were involved in an alien smuggling venture and that ARA used the Target Device to coordinate with the as yet unknown persons to bring the aliens into the United States and/or transport them further into the United States. Additionally, I believe that recent calls made and received, telephone numbers, contact names, electronic mail (e-mail) addresses, appointment dates, text messages, pictures, and other digital information are stored in the memory of the Target Device, which may identify other persons involved in alien smuggling activities.

23. I am aware that smuggling conspiracies require planning to successfully evade detection by law enforcement. In my professional training and experience, this may require planning and coordination in the days and weeks prior to the event. Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine their whereabouts. Given this, I respectfully request permission to search the Target Device for data beginning on September 3, 2022, up to and including October 3, 2022, the day after the arrest of ARA.

## METHODOLOGY

24. It is not possible to determine merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books, and can be mini-computers allowing for electronic mail services, web services, and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all

of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode," which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and, instead, store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

25. Following the issuance of this warrant, a case agent familiar with the investigation will collect the Target Device and subject it to analysis. All forensic analysis of the data contained within the telephone, and the memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

26. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this Court.

//
//
//
//
//
//

## CONCLUSION

27. Based on all of the facts and circumstances described above, I believe that probable cause exists to conclude that ARA used the Target Device to facilitate the offense of alien smuggling. The Target Device was likely used to facilitate the offense by transmitting and storing data, specifically that described in Attachment B, which constitutes evidence of violations of Title 8, United States Code, Section 1324. I also believe that probable cause exists to believe that evidence of illegal activity committed by ARA, the Material Witness, and others continues to exist on the Target Device. Therefore, I respectfully request that the Court issue this warrant.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Moncerad Soto, Border Patrol Agent
United States Border Patrol

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 23rd day of December, 2022.

_____   1:46 p.m.
HON. LUPE RODRIGUEZ, JR.
UNITED STATES MAGISTRATE JUDGE

10

# ATTACHMENT A
## PROPERTY TO BE SEARCHED

The following property is to be searched:

>Apple iPhone (Grey)
>Model: iPhone 13
>IMEI: Unknown
>Seized from Julio Emanuel ARA-Revolorio
>**(Target Device)**



The **Target Device** is currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT B

### ITEM TO BE SEIZED

Authorization to search the mobile telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of September 3, 2022, up to and including October 3, 2022, and is limited to the following:

   a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

   b. tending to identify other facilities, storage devices, or services – such as email addresses, IP addresses, and/or phone numbers – that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

   c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

   d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

   e. tending to identify the user of, or persons with control over or access to, the Target Device;

   f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of Title 8 U.S.C. § 1324.